**EASTMAN MCCARTNEY DALLMANN LLP**
Andrew S. Dallmann (SBN 206771)
Andrew@EMDLLP.com
2603 Main Street, Suite 200
Irvine, California 92614
Telephone: (949) 379-6649
Facsimile: (949) 218-4099

**THE GIMINO LAW OFFICE, APC**
Peter J. Gimino III (SBN 198926)
pgimino@giminolaw.com
1 Park Plaza, Suite 600
Irvine, CA 92614
Telephone: (949) 225-4446
Facsimile: (949-225-4447

Attorneys for Plaintiff Straumann USA, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Straumann USA, LLC, a Delaware limited liability company, | Case No. 8:19-cv-00878 |
| Plaintiffs, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| TruAbutment Inc., a California corporation, | |
| Defendants. | |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKROUND ......................................................................................... 3

III.  LEGAL STANDARD FOR MOTION TO DISMISS ................................................ 5

IV.   STRAUMANN'S PATENT CLAIMS (COUNTS I-VI) ARE NOT BARRED BY THE DOCTRINE OF PATENT EXHAUSTION ............................................................ 6

V.    STRAUMANN'S LANHAM ACT AND SECTION 17200 CLAIMS (COUNTS VII-VIII) ARE NOT PRIVATE ACTIONS TO ENFORCE THE FOOD, DRUG AND COSMETIC ACT 133

VI.   STRAUMANN'S EIGHTH CLAIM FOR VIOLATION OF UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §17200, *ET SEQ.*) HAS A BASIS INDEPENDENT OF PATENT INFRINGEMENT AND IS NOT PREEMPTED ...................................................... 16

VII.  STRAUMANN HAS PLED FACTS SUFFICIENT TO STATE A CLAIM FOR VIOLATION OF THE LANHAM ACT AND CAL. BUS. & PROF. CODE § 17200 ................ 17

   A.    STRAUMANN PLEADS THAT TRUABUTMENT MADE FALSE  STATEMENTS ABOUT THE COMPATIBILITY OF ITS ABUTMENTS WITH PARTICULARITY ........... 19

   B.    STRAUMANN PLEADS TRUABUTMENT'S DECEPTION WITH PARTICULARITY 21

   C.    STRAUMANN PLEADS THE INJURY CAUSED BY TRUABUTMENT'S CONDUCT WITH PARTICULARITY ...................................................................... 23

   D.    STRAUMANN PLEADS UNFAIR COMPETITION WITH PARTICULARITY ......... 24

   E.    STRAUMANN PROPERLY STATES A CLAIM FOR RELIEF PURSUANT TO BUSINESS & PROFESSIONS CODE § 17200 .................................................................. 24

VIII. ALTERNATIVELY, IF THE COURT DETERMINES THAT ADDITINOAL FACTUAL DETAIL IS REQUIRED, STRAUMANN REQUESTS LEAVE TO AMEND ........................... 25

IX.   CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991)..................................................................................16

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. C-04-03526-SI, 2008 WL 3915322 (N.D. Cal. Aug. 21, 2008).........................................................7

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, No. SACV 11-0189 AG (RNBx), 2014 WL 12577148 (C.D. Cal. Aug. 4, 2014)..........................................................7

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961)...............10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................5, 6

*Balboa Ins. Co. v. Trans Glob. Equities*, 218 Cal. App. 3d 1327 (1990) ................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).........................................................6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999). .......................................................................................................................16, 24

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ....................................................25

*Eclat Pharm., LLC v. W.-Ward Pharm. Corp.,* 2014 WL 12597594 (C.D. Cal. Feb. 12, 2014)..............................................................................................................18

*Innovative Health Sols., Inc. v. DyAnsys, Inc.*, No. 14-CV-05207-SI, 2015 WL 2398931 (N.D. Cal. May 19, 2015) ....................................................................15

*Johnson v. Lucent Tech., Inc.*, 653 F.3d 1000 (9th Cir. 2011)....................................6

*JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003 (C.D. Cal. 2013)...........8

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......................................18

*Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370 (Fed. Cir. 2013). ...........................8

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)...................24

*Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734 (2017)....................................12

*LifeScan Scotland, Ltd. v. Shasta Techs.*, *LLC*, 734 F.3d 1361 (Fed. Cir. 2013)....6, 9

*Millennium Dental Techs. Inc. v. Terry*, SA CV 18-0348-DOC (KESx), 2018 WL
    5094965 (C.D. Cal. July 16, 2018) ......................................................17, 18, 19, 22

*No Doubt v. Activision Publ'g, Inc.*, 192 Cal.App.4th 1018 (2011). .......................16

*Norgren Automation Solutions, Inc. v. K & A Tool Co.*, No. 11–12675, 2013 WL
    1282029 (E.D. Mich. Mar. 26, 2013)................................................................7, 8

*PhotoMedex, Inc. v. Irwin*, 601 F.3d 919 (9th Cir. 2010). ..........................13, 14, 15

*POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014)………….…….13

*Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008)................6, 10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .18

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)..........17, 24

**Statutes**

Cal. Bus. & Prof. Code § 17200. ........................................................................16, 17

Fed. R. Civ. P. 8(a)(2)...............................................................................................5

Fed. R. Civ. P. 9(b) ................................................................................................18

21 U.S.C. § 337(a) ..................................................................................................13

## I.  INTRODUCTION

TruAbutment Inc. ("TruAbutment") is willfully infringing Straumann USA, LLC ("Straumann")'s patents and misleading the public by marketing and selling dangerous products that are purportedly "compatible" with Straumann's original dental implants.

Straumann's complaint seeks relief arising from TruAbutment's willful patent infringement and unfair competition, while also seeking to ensure that patients and doctors continue to have access to safe and reliable dental components.  In support of its claims, Straumann has alleged in detail that TruAbutment sells abutments that it markets as cheap replacements that are "compatible" with Straumann's dental implants; that TruAbutment knows that these products copy Straumann's patented connection; that TruAbutment's deceptive marketing is misleading to dentists and laboratories using Straumann products; and that  TruAbutment's non-compatible abutments' failures present serious safety risks to patients and cause irreparable harm to Straumann's business and reputation.

In its motion to dismiss, TruAbutment misconstrues Straumann's claims in order to create the appearance of preemption that does not exist and applies an overly narrow view of isolated factual allegations to suggest that the claims are insufficiently stated.  Further, TruAbutment prematurely places the merits of this action before the Court when the proper focus is whether sufficient facts have been alleged at the pleading stage.  Accordingly, the motion to dismiss is defective and should be denied for the following reasons:

First, Straumann's patents-in-suit are not barred by the doctrine of patent exhaustion because Straumann's implant does not substantially embody the patented invention.  Instead, the patented implant system is comprised of three distinct components – the implant, abutment and locking screw – which comprise the patented invention only when combined and working in concert.

Second, Straumann's Lanham Act (Claim VII) and Section 17200 (Claim VIII) claims are not barred by the Food, Drug and Cosmetic Act for the simple reason that Straumann does not seek to litigate TruAbutment's violations of the FDCA.  Instead, Straumann cites FDA standards only as background allegations to support the deficient safety and effectiveness of TruAbutment's products claimed to be compatible with Straumann products.

Third, Straumann's Section 17200 claim is not preempted because it has a basis separate and apart from any patent infringement claim.  Specifically, the complaint alleges that the Section 17200 claim also arises from the alleged Lanham Act violations.

Fourth, even assuming Straumann's Lanham Act and Section 17200 claims are based in fraud so as to invoke the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), Straumann has alleged facts to establish the elements of these claims sufficient to meet that standard.  Straumann has alleged specific facts regarding TruAbutment's false advertising that its products are "compatible" with Straumann products.  The complaint not only includes screenshots of and citations to webpages, but it also identifies the exact models of TruAbutment's offending products. Straumann has also specifically alleged the nature of TruAbutment's deception, the influence of the deception on purchasers including laboratories and dentists, and the resulting harm to Straumann.

Accordingly, Straumann respectfully submits that the complaint alleges facts sufficient to state the claims asserted and requests that TruAbutment's motion to dismiss be denied.  While Straumann believes that the complaint contains sufficient factual detail for the claims to progress past the pleading stage, if the Court determines that additional detail is required in support of any of the claims, Straumann respectfully requests leave to amend to provide that additional detail.

## II. FACTUAL BACKROUND

Straumann is part of the Straumann Group, a global leader in implant, restorative and regenerative dentistry.  In collaboration with leading clinics, research institutes and universities, Straumann conducts research, develops and manufactures dental implants, instruments, prosthetics, tissue and bone regeneration biomaterials for use in tooth replacement and restoration, or to prevent tooth loss. (Dkt. 1, ¶ 12).

Straumann is the leading provider in the United States of premium dental implants.  More than three million people in the United States have one or more dental implants.  Dental implants, which function as artificial tooth roots, are implantable medical devices that are surgically implanted in a patient's maxilla or mandible (upper or lower jaw bone) to replace natural teeth. After being placed in a patient's maxilla or mandible, those implants are integrated into the patient's natural bone (referred to in the field as "osseointegration").  Dental implants may be designed so that the top is level with the surrounding bone (a "bone-level" implant) or so that the top extends past the bone into the surrounding gum tissue (a "tissue-level" implant). (Dkt. 1, ¶ 13.)

A connector – known as an abutment – is then placed on inside of the dental implant.  The abutment is placed only after the patient has had time to heal from the implant surgery and enough time has passed to allow osseointegration.  This abutment may be secured to the implant with a small screw.  An abutment holds and supports a dental restoration, such as a crown or bridge.  (Dkt. 1, ¶ 14.)

Straumann has patented several aspects of its dental implant systems, including the innovative CrossFit® connection between its bone-level implants and their corresponding abutments. The patents-in-suit are U.S. Patent Nos. 8,968,002 (the "'002 Patent") and 8,408,904 (the "'904 Patent"), both titled "Coupling for a Multi-Part Dental Implant System."  The '904 Patent was duly and legally issued by the United States Patent and Trademark Office on April 2, 2015.  The '002 Patent

1  was duly and legally issued by the United States Patent and Trademark Office on

2  March 3, 2015. (Dkt. 1, ¶16.)

3       As the patents-in-suit explain, before the CrossFit connection, "a frequent

4  problem arising" with conventional implants was "the correct positioning of the

5  abutment or the secondary part within the dental implant already placed in the bone

6  tissue." (Dkt. 1, ¶18.) The patented CrossFit connection solves this problem by

7  "avoid[ing] the drawbacks of the prior art devices, and thus allowing a stable and

8  sterile coupling between the dental implant and the abutment." (Dkt. 1, ¶18.)

9       A picture of a Straumann bone-level implant, abutment and screw is shown in

10  cross-section below (right), as is a drawing of the same assembly from one of the

11  patents-in-suit (left).



21  (Dkt. 1, ¶19.) One advantage of the patented inventions is the innovative anti-

22  rotational features in the implant and abutment. (Dkt. 1, ¶20.) It is essential that an

23  abutment be stable and unable to rotate when it is fixed within an abutment.  One of

24  the innovative aspects of the patented CrossFit connection is the inclusion of anti-

25  rotational elements in the abutment and implant: "these elements mate precisely

26  with each other when the abutment is correctly aligned and inserted, sealing the

27  abutment and preventing rotational movement." (Dkt. 1, ¶20.) These anti-rotational

28  elements in abutments and implants are shown in the figures below, which are

images of a Straumann CrossFit implant/abutment connection (left) and Figure 6 of the '904 Patent (right).



(Dkt. 1, ¶20.)  These anti-rotational features are partially embodied by the implant, and partially embodied by the abutment.

Another advantage of the patented CrossFit connection is the anti-jamming feature.  The patent claims a system in which the abutment cannot be fully inserted into the implant unless these anti-rotational features are aligned.  (Dkt. 1, ¶21 (Claim 1).) The screw cannot grip the threads of the implant if the abutment is not fully inserted.  This feature prevents a doctor from securing the assembly without proper alignment.  As shown in Figure 1E (above) and as explained in the patents-in-suit:  "the fastening (or threading) of the screw 3 to a dental implant is only possible once the second section 4 along with the third section 22 are fully inserted into their complementary sections of the dental implant, as will be described hereinafter.  In this way a wedging of the screw can be avoided." (Dkt. 1, ¶21, referring to '904 Patent, 4:64-5:2.)  The anti-jamming feature is therefore partially embodied in the design of all three of these components.

## III.    LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) mandates a claim for relief need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1       The well-settled standard applied by the courts requires that "[o]n a motion to

2   dismiss, all allegations of material fact are taken as true and construed in the light

3   most favorable to the nonmoving party." *Johnson v. Lucent Tech., Inc.*, 653 F.3d

4   1000, 1010 (9th Cir. 2011).  Although federal pleading standards require more than

5   "formulaic recitation of the elements" of a claim or "naked assertion[s]," a

6   complaint will survive dismissal where it allows the court to "draw the reasonable

7   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

8   678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). "Factual

9   actual allegations must be enough to raise a right to relief above the speculative

10  level . . . on the assumption that all the allegations in the complaint are true (even if

11  doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation

12  omitted).  A complaint must state a "plausible" claim for relief to survive a motion

13  to dismiss. *Iqbal*, 556 U.S. at 679.

14  **IV.   STRAUMANN'S PATENT CLAIMS (COUNTS I-VI) ARE NOT**

15         **BARRED BY THE DOCTRINE OF PATENT EXHAUSTION**

16      Patent exhaustion is a common law doctrine, similar to the "first sale"

17  doctrine in copyright law, intended to cut off a patent holder's rights to a patented

18  article after it is legally acquired by an end user.  Exhaustion is triggered when the

19  patent owner authorizes a sale of a component that has no reasonable non-infringing

20  use and that ***substantially embodies*** the patented invention.  *Quanta Computer, Inc.*

21  *v. LG Electronics, Inc.*, 553 U.S. 617 (2008) (emphasis added).  A component

22  substantially embodies the invention when the additional steps or parts needed to

23  complete the invention from the component are non-inventive.  *LifeScan Scotland,*

24  *Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1368 (Fed. Cir. 2013). In *Quanta*, the

25  Supreme Court held that Intel's products substantially embodied the patents because

26  "[e]verything inventive about each patent [was] embodied in the Intel [processors

27  and chipsets]" and "because the only additional step necessary to practice the

28

1  patent[s was] the application of common processes ***or the addition of standard***
2  ***parts***." 553 U.S. at 633 (emphasis added).

3        California district courts addressed patent exhaustion in two recent decisions
4  post-*Quanta*: in one case, the court held that patent exhaustion did not apply, and in
5  the other, the court expressed skepticism towards the application of this defense
6  under facts similar to here. In *Ameranth*, the court expressly held that exhaustion did
7  not apply where the defendant paired the plaintiff's hardware with a third party's
8  software, akin to how TruAbutment has paired its own abutments with Straumann's
9  implants. *Ameranth, Inc. v. Genesis Gaming Solutions, Inc*., No. SACV 11-0189
10  AG (RNBx), 2014 WL 12577148, at *3 (C.D. Cal. Aug. 4, 2014). In *ACCO*, the
11  Northern District addressed a case even more factually similar, involving a patented
12  system with specially measured, interlocking parts.  There, the plaintiff authorized
13  computer manufacturers to design their computers with "Kensington slots," which
14  were specially sized to have a Kensington lock (an external computer lock) fit
15  inside. *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. C-04-
16  03526-SI, 2008 WL 3915322, at *2 (N.D. Cal. Aug. 21, 2008).  The plaintiff sold
17  these specially sized locks, and the defendant sold knockoff locks designed to fit
18  into the same Kensington slots. *Id.* In the resulting patent infringement lawsuit, the
19  defendant requested leave to amend its answer to add patent exhaustion as a defense.
20  The Court reluctantly granted leave to amend, noting it was "skeptical" that the
21  Kensington slots substantially embodied the invention so as to support an
22  exhaustion defense. *Id.*

23        Straumann's implant-abutment combination is conceptually similar to the
24  slot-lock combination in *ACCO Brands*, as both inventions are embodied by the
25  physical design of multiple components, and the benefit of the invention lies in how
26  those components coordinate with each other.   Straumann's implants standing alone
27  do not substantially embody the invention, and therefore patent exhaustion does not
28  apply. *See also Norgren Automation Solutions, Inc. v. K & A Tool Co.*, No. 11–

12675, 2013 WL 1282029, at *1-2 (E.D. Mich. Mar. 26, 2013) (patent claiming two-part assembly not substantially embodied by single part: "The receivers do not include everything that is inventive about the patents because the receiver is only half of the patented combination.  Therefore, the sale of the receivers without adapters is not a patent-exhausting event.").

Straumann's claimed dental implant system – which requires not only three distinct structural components but also a precise geometric interplay between each component – is in stark contrast to the cases cited by TruAbutment.  In *Keurig*, the ***asserted*** claims were directed to "[a] method of brewing a beverage from a beverage medium contained in a disposable cartridge."  *Keurig, Inc. v. Sturm Foods, Inc*., 732 F.3d 1370, 1371 (Fed. Cir. 2013).  Importantly, in the same asserted patents were apparatus claims ***only*** directed to the coffee brewer as opposed to the coffee pod.  There was no dispute that had Keurig asserted is apparatus claims, exhaustion would have applied. *Id.* at 1373-74. In holding that patent exhaustion likewise applied to Keurig's method claims, the Court stated "patent exhaustion jurisprudence has focused on the exhaustion of the patents at issue in their entirety, rather than the exhaustion of the claims at issue on an individual basis.  Keurig's decision to have sought protection for both apparatus and method claims thus means that those claims are judged together for purposes of patent exhaustion." *Id.* at 1374.

TruAbutment also cites *JVC Kenwood Corp. v. Arcsoft, Inc*., but that case establishes that patent exhaustion should not apply in this instance. *JVC Kenwood Corp. v. Arcsoft, Inc*., 966 F. Supp. 2d 1003, 114-115 (C.D. Cal. 2013).  In *JVC*, the court found the asserted patents exhausted through authorized sales of optical discs. *Id*. at 114-115.  Just as in *Keurig*, the asserted patents in *JVC* also included apparatus claims that were directed only to those discs, which proved the discs alone substantially embodied the invention. *Id*.  Therefore, JVC had exhausted its rights, even to method claims from the same patents that included steps performed by standard recording devices. *Id*.  Here, in sharp contrast, every claim of both asserted

1  Straumann patents requires a combination of three inventive elements: an implant,

2  an abutment, and a screw all specially designed to cooperate in a novel way.

3       In *LifeScan*, LifeScan claimed a "method of measuring the concentration of a

4  substance in a sample liquid comprising the steps of … providing a measuring

5  device[,] said device comprising:

6       …

7       applying the sample liquid to said measuring device;

8       measuring an electric current at each working sensor part proportional to the

9            concentration of said substance in the sample liquid;

10       comparing the electric current from each of the working sensor parts to

11            establish a difference parameter; and

12       giving an indication of an error if said difference parameter is greater than a

13            predetermined threshold.

14  *LifeScan Scot., Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1364 (Fed. Cir. 2013).  In

15  holding patent exhaustion applied to LifeScan's claim of infringement directed to

16  Shasta's disposable test strips, the court explained that:

17       There is … no dispute that in LifeScan's blood glucose testing
     system, it is the meter, not the strips, which performs the

18       "measuring," "comparing," and "giving an indication of an
     error" steps. … Because it is the ***meter alone*** that performs these

19       key inventive steps of the claimed method, the meter
     substantially embodies the method claims of the '105 patent.

20  *Id.* at 1371 (emphasis added).

21       As with *Quanta*, the court found that there was nothing inventive in the test

22  strips themselves.  That is simply not the case with the abutment used in the

23  Straumann implant system.  Indeed, TruAbutment concedes, as it must, that during

24  the prosecution history of the '904 patent, the "anti-jamming" feature of the patents-

25  in-suit solved the "drawback [in the prior art] by changing the abutment and ***implant***

26  ***configuration*** such that it is not possible to fasten the screw while the abutment is

27  held in an intermediate position."  TruAbutment Brf. at 7:6-12 (emphasis original).

28

1    But TruAbutment disingenuously tries to gloss over the importance of the

2    abutment in the above quote by *only* bolding and italicizing the implant portion.

3    Unlike a generic coffee pod, the key to Straumann's invention is not merely a

4    generic abutment that just happens to work with a Straumann implant, but rather a

5    unique implant, abutment and locking screw that can only be locked in place when

6    the abutment and implant are properly aligned.  Straumann's patented implants

7    cannot be used with "standard components" (*Quanta*, 553 U.S. at 633):  instead,

8    they require specially designed screws and abutments that embody part of the

9    inventive concept of the asserted patents.  Though Defendant claims that "the

10   implant necessarily dictates the shape of the abutment" (Dkt. 29, p. 6, line 23), it is

11   equally true that the abutment dictates the shape of the implant. Indeed,

12   TruAbutment manufactures and markets the accused abutments and screws

13   specifically and solely for use with the patented Straumann implants; they have no

14   other use.  Therefore, the Straumann implants standing alone cannot substantially

15   embody the claims of the patents-in-suit, for it is the combination of the abutment,

16   implant and locking screw as part of the claimed system that is inventive.  E.g., '002

17   patent (Dkt. 1-2) at 1:18-19 (asserting that the invention relates to an "improved

18   coupling").

19   Finally, TruAbutment argues that because Straumann could not separately

20   patent its abutment, there is nothing inventive about the abutment in the context of

21   the asserted claims.  This argument is a red herring.  As the Supreme Court

22   explained in *Aro*, where a claim is drawn to a combination of elements, parsing out

23   individual elements (whether separately patentable or not) is not the test for patent

24   exhaustion.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336,

25   344 (1961).

26   The only test is whether the sale of a component, in this case an implant,

27   substantially embodies the patented invention.  *Quanta*, 553 U.S. at 638.  This

28   question cannot be answered in a vacuum.  Key to this analysis – and absent from

1   TruAbutment's motion – is a complete analysis of the asserted claim language.

2   Representative Claim 1 of the '904 Patent is below:

3         1. A dental implant system comprising a dental implant, ***an abutment and a***

4   ***threaded screw***, the ***abutment being provided with a guiding and lock means for***

5   ***associating the abutment*** to the dental implant, ***the guiding and lock means***

6   ***comprising:***

7            ***a first conically tapered section; and***

8            ***a second non-tapered section arranged apically adjacent to the first section,***

9                  ***the second section being provided with an anti-rotational means***

10                 ***including at least one protrusion extending radially with respect to***

11                 ***the axis of the abutment and adapted to cooperate with the  dental***

12                 ***implant so as to provide rotational guidance to the abutment upon***

13                 ***insertion thereof*** into the implant, and

14   the dental implant being provided with a complementary guiding and lock

15                 means comprising:

16   a first conically tapered section; and

17   a second section being provided with an annular platform extending radially

18                 with respect to the axis of the dental implant and interposed between

19                 grooves, said annular platform being adapted to cooperate with the

20                 abutment so as to provide rotational guidance to the abutment upon

21                 insertion thereof into the implant,

22   wherein the dental implant further comprises a threaded section arranged

23                 apically to the second section and the abutment is adapted to axially

24                 hold the threaded screw for fastening the abutment to the dental

25                 implant,

26            ***wherein the overall axial length of the first and second sections of the***

27                 ***abutment, the length of the threaded screw and the position of the***

28                 ***threaded screw within the abutment are selected such that threaded***

1  *engagement of the threaded screw to the dental implant is not*

2  *possible when the at least one protrusion is held in an intermediate*

3  *position* on the annular platform of the implant*, wherein the*

4  *intermediate position is a position where the longitudinal axes of the*

5  *guiding and lock means of the abutment* and of the implant *are*

6  *coaxial with one another.*

7        The emphasis above was added to contrast the sections of the claim directed

8  to the abutment and locking screw versus the implant.  When viewing the above

9  claim language in the context of the infringement claim charts attached to

10  Straumann's complaint (Dkt. 1-5; 1-6), it is apparent that claims are not merely

11  directed to an implant but instead cover the design, relative size and interplay

12  between the implant, abutment and locking screw.  Only by designing a complete

13  product (as opposed to just the implant) can the patented "improved coupling" be

14  achieved.

15        In light of the claim construction and technical expertise involved, patent

16  exhaustion is not easily resolvable on a motion to dismiss. Although not squarely

17  dealing with the issue of exhaustion, in a recent post-*Quanta* Supreme Court

18  decision, the Court noted the difficulty of determining which components, or

19  combination of components, "substantially" embodies the entire invention: "Surely

20  a great many components of an invention (if not every component) are important.

21  Few inventions … would function at all without any one of their components. How

22  are courts—or, for that matter, market participants attempting to avoid liability—to

23  determine the relative importance of the components of an invention?" *Life Techs.*

24  *Corp. v. Promega Corp.*, 137 S. Ct. 734, 741 (2017).

25        While Straumann is confident that it will ultimately defeat TruAbutment's

26  exhaustion defense, at a minimum Straumann respectfully submits that it would be

27  premature to dismiss this claim before this Court has had an opportunity to construe

28  these claims.

### V. STRAUMANN'S LANHAM ACT AND SECTION 17200 CLAIMS (COUNTS VII-VIII) ARE NOT PRIVATE ACTIONS TO ENFORCE THE FOOD, DRUG AND COSMETIC ACT

Straumann's Lanham Act and Section 17200 claims are not barred because Straumann is not seeking to enforce the Food, Drug, and Cosmetic Act (FDCA), but instead seeks relief based on the harm TruAbutment has caused Straumann. TruAbutment's violations of FDA regulations and other laws, while relevant to Straumann's causes of action, do not form the bases for those causes of action.

The FDCA specifically bars private civil actions that attempt to prosecute matters within the purview of the Food and Drug Administration (FDA). *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010). *See* 21 U.S.C. § 337(a) ("[P]roceedings for the enforcement or to restrain violations, of [the Food, Drug and Cosmetic Act] shall be by and in the name of the United States."). This bar, however, is limited to claims requiring "litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation." *PhotoMedex, Inc.*, 601 F.3d at 924. The Supreme Court has held that Lanham Act claims referring to FDA-regulated activities are viable so long as the lawsuit does not undermine an FDA judgment. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 120 (2014). The FDCA and the Lanham Act are considered "complementary" systems where the Lanham Act is "a means to implement a uniform policy to prohibit unfair competition in all covered markets." *Id.* at 118. FDCA enforcement is "[u]nlike the Lanham Act, which relies in substantial part for its enforcement on private suits brought by injured competitors." *Id.* at 109. Thus, private Lanham Act claims are still viable. *PhotoMedex, Inc.*, 601 F.3d at 924-25 ("To be clear, we do not suggest that the Lanham Act can never support private party claims involving FDA approval or clearance of drugs or medical devices. That is not the case.").

In casting Straumann's Lanham Act and Section 17200 claims as private actions to enforce the Food, Drug and Cosmetic Act, TruAbutment misconstrues the

1  nature of Straumann's claims.  Contrary to TruAbutment's interpretation,

2  Straumann's claims do not seek *enforcement* of the FDCA. Instead, private rights of

3  action under the Lanham Act and Section17200 are asserted.  This is confirmed by a

4  review of the Lanham Act claim, which confirms that Straumann seeks private

5  remedies (i.e., damages) for diversion of sales and lessening of goodwill.  (Dkt. 1,

6  ¶¶95, 99, 100, 101.)  Similarly, Straumann's Section 17200 claim seeks private

7  remedies, namely "lost money and profits" and "irreparable injury to [Straumann's]

8  reputation and goodwill" as well as injunctive relief and restitution.  (Dkt. 1, ¶¶107-

9  08.)   Straumann seeks neither statutory penalties under the FDCA nor a court order

10 demanding that TruAbutment comply with FDA regulations.

11      TruAbutment seizes on Straumann's reference in the complaint to

12 TruAbutment's FDA submissions but misconstrues those references as making

13 claims to seek enforcement of FDCA.  Instead, those allegations provide factual

14 background to the complaint; they do not plead a cause of action for private FDCA

15 enforcement.  Specifically, throughout the complaint, Straumann stresses the

16 importance of abutments' safety and identifies the serious safety risks to patients

17 arising from the use of TruAbutment's "cheap replacements" that are marketed as

18 "'compatible' with Straumann's dental implants." (Dkt. 1, ¶4.)  As an indicator of

19 the importance that the subject abutments be safe, Straumann states that the implants

20 and abutments rise to the level of medical devices governed and regulated by the

21 FDA. (Dkt. 1, ¶3.)  A core allegation running throughout the complaint is that

22 TruAbutment's abutment is not a safe alternative to, or properly compatible with,

23 authentic, premium Straumann implants.  TruAbutment's reckless failure to

24 "comply with FDA requirements designed to ensure that TruAbutment abutment are

25 safe and effective" strongly supports Straumann's allegations that TruAbutment

26 recklessly disregards patient safety. (Dkt. 1, ¶4.)

27      Further, TruAbutment's reliance on *PhotoMedex* does not support dismissal

28 of Straumann's claims.  In *PhotoMedex,* the plaintiff tried to establish that the

1   defendant had violated the FDCA by selling its products without FDA clearance; the

2   FDA, however, had already investigated the issue and decided that the products in

3   question did not require clearance. *PhotoMedex, Inc.*, 601 F.3d at 927. Straumann,

4   by contrast, does not seek to establish that TruAbutment violated the FDCA. Rather,

5   Straumann has cited Defendant's FDA non-compliance as indirect evidence tending

6   to show that Defendant's product suffers in quality and is not actually "compatible"

7   with Straumann implants as TruAbutment has claimed. Straumann's argument is

8   that Defendant's product, which skipped critical regulatory steps, was developed too

9   hastily and without enough foresight to be actually "compatible" with Straumann

10  implants: "Rather than prove that its 'compatible' abutments were also safe and

11  effective, as they were legally required to do, TruAbutment just started offering

12  them to dental laboratories as soon as they could start manufacturing them." (Dkt. 1,

13  ¶38.) Although FDA non-compliance certainly suggests the falsity of

14  TruAbutment's product safety claims, proving actual non-compliance is not

15  essential to Straumann's claims because TruAbutment's has made false

16  compatibility claims notwithstanding any related FDA issues.  Further, unlike in

17  *PhotoMedex*, the FDA has not made any judgment as to Defendant's products, so a

18  district court ruling in Straumann's favor on false advertising or unfair competition

19  would not have the effect of circumventing an FDA decision.

20       Instead, Straumann's Lanham Act claim is the type of claim for injuries by a

21  competitor recognized as viable by the Court in *PhotoMedex. See Innovative Health

22  Sols., Inc. v. DyAnsys, Inc.*, No. 14-CV-05207-SI, 2015 WL 2398931, at *7 (N.D.

23  Cal. May 19, 2015) (distinguishing *PhotoMedex* and finding "that to the extent

24  plaintiff alleges that defendants have falsely represented that they obtained FDA

25  approval for their products, those claims are not precluded or preempted.").

26  Accordingly, TruAbutment's motion on this basis should be denied.

27

28

## VI. STRAUMANN'S EIGHTH CLAIM FOR VIOLATION OF UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §17200, *ET SEQ.*) HAS A BASIS INDEPENDENT OF PATENT INFRINGEMENT AND IS NOT PREEMPTED

California Business & Professions Code Section 17200 prohibits "any unlawful, unfair, or fraudulent business practice or act." Cal. Bus. & Prof. Code § 17200. *See Balboa Ins. Co. v. Trans Glob. Equities*, 218 Cal. App. 3d 1327, 1341 (1990) ("'[u]nfair competition' includes a broad range of claims"). Further, by proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999).   It is also common for Lanham Act and unfair competition claims to be pled together, for the two theories are "substantially congruent." *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991); *No Doubt v. Activision Publ'g, Inc.*, 192 Cal.App.4th 1018, 1038-39 (2011).

In the analogous context of a copyright infringement claim, the courts have recognized that in order "to survive preemption, [a] complaint must allege an element beyond "unauthorized duplication or transfer." Moreover, that element must make the state claim 'qualitatively different from a copyright infringement claim.'" *Balboa Ins. Co.*, 218 Cal. App. 3d at 1340.

In an effort to establish preemption, TruAbutment ignores key allegations of the complaint and incorrectly asserts that Straumann's Section 17200 claim is based solely on patent infringement claims.  However, Straumann alleges claims qualitatively different and independent from the patent infringement claims. Specifically, in addition to referencing the alleged patent infringement, the Section 17200 claim plainly invokes the alleged violations of the Lanham Act:

> The above-described acts further constitute business acts are also likely to [] confuse, mislead or deceive the general public as to the

> compatibility of its products with those of Straumann, as to the safety of its products, and as to the extent of FDA approval of its products, and therefore constitutes unfair and fraudulent business practices in violation of California Business & Professions Code §17200, *et seq.*

(Dkt. 1, ¶104.)  The Complaint alleges that TruAbutment's conduct violates Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and that such conduct constitutes "a continuing threat and are meant to deceive members of the public."  (Dkt. 1, ¶¶105-06).  Because the Lanham Act claims are alone sufficient to support Straumann's Section 17200 claim, the Section 17200 claim is not subject to preemption.

## VII.   STRAUMANN HAS PLED FACTS SUFFICIENT TO STATE A CLAIM FOR VIOLATION OF THE LANHAM ACT AND CAL. BUS. & PROF. CODE § 17200

In order to state a false advertising claim under the Lanham Act, the following elements must be alleged:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce;[3] and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997).

Unfair competition simply requires establishing an "unlawful, unfair, or fraudulent business practice or act." Cal. Bus. & Prof. Code § 17200.  Therefore, a complaint that sufficiently pleads the underlying statutory violation sufficiently pleads the related unfair competition claim. *See, e.g.*, *Millennium Dental Techs. Inc. v. Terry*, SA CV 18-0348-DOC (KESx), 2018 WL 5094965, at *1 (C.D. Cal. July 16, 2018) (concluding that the same set of facts satisfied the Rule 9(b) pleading

1  requirements for both Lanham Act false advertising and state-law unfair

2  competition).

3  "Although the Ninth Circuit has not specifically held that Rule 9(b) applies to

4  Lanham Act claims, courts have concluded that such claims 'are grounded in fraud,

5  such as misrepresentation claims,' and may be subject to heightened pleading

6  requirements." *Eclat Pharm., LLC v. W.-Ward Pharm. Corp.,* 2014 WL 12597594,

7  at \*6 (C.D. Cal. Feb. 12, 2014).  Further, "[i]n alleging fraud or mistake, a party

8  must state with particularity the circumstances constituting fraud or mistake." Fed.

9  R. Civ. P. 9(b).  *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009)

10  (citation omitted) ("Rule 9(b) demands that the circumstances constituting the

11  alleged fraud "be 'specific enough to give defendants notice of the particular

12  misconduct . . . so that they can defend against the charge and not just deny that they

13  have done anything wrong.'").  *See also Schreiber Distrib. Co. v. Serv-Well*

14  *Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citation omitted) (Rule 9(b)

15  "requires the identification of the circumstances constituting fraud so that the

16  defendant can prepare an adequate answer from the allegations.").  The courts have

17  recognized that Rule 9(b) requires allegations of "the time, place, and specific

18  content of the false representations as well as the identities of the parties to the

19  misrepresentation." *Id.* at 1401.

20  Here, even assuming that the heightened pleading requirements of Rule 9

21  apply, Straumann meets those standards with respect to each of the elements of its

22  Lanham Act and unfair competition claim.

23  In fact, *Millennium Dental Techs. v. Terry* is closely analogous and instructive

24  to the claims asserted in this case.  *Millennium* involved patented dental technology

25  and this Court denied the defendant's motion to dismiss Lanham Act false advertising

26  and state-law unfair competition claims. The Court reasoned that the defendant's

27  "primary sales strategy in the periodontal space revolve[d] around conflating

28

1  [plaintiff's products] with [defendant's] inferior products and services." *Millennium*,

2  2018 WL 5094965, at *4.

3      In *Millennium*, the Court held the plaintiff had actionable false advertising

4  and unfair competition claims against a competitor who made false product

5  comparisons, similar to what TruAbutment is alleged to have done here.  Both of

6  Millennium's claims survived the pleading stage, even applying the strict Rule 9(b)

7  standards.  As in that case, TruAbutment has attempted to profit from another dental

8  company's goodwill by selling a cheaper, knockoff product that tarnishes the

9  precision of the original product. For the reasons explained below, Straumann's

10  claims are akin to the claims in *Millennium* and this Court should deny Defendant's

11  motion to dismiss Straumann's false advertising claim and unfair competition claim.

12      **A.  STRAUMANN PLEADS THAT TRUABUTMENT MADE FALSE**

13             **STATEMENTS ABOUT THE COMPATIBILITY OF ITS ABUTMENTS WITH PARTICULARITY**

14      Straumann pleads falsity in connection with its Lanham Act claim by alleging

15  that TruAbutment advertises that its abutments are "compatible" with Straumann

16  implants, yet the abutments are not reliably compatible with Straumann implants,

17  causing harm to patients when the entire assembly fails. (Dkt. 1, ¶ 4.)  Further,

18  Straumann alleges that TruAbutment made false statements in its advertisements

19  and FDA submissions that its Accused Products are compatible with, or equivalent

20  to, Straumann's authentic products. (Dkt. 1, ¶91.)  These allegations of false

21  compatibility are consistent with the finding in *Millennium* that false product

22  comparisons, particularly in a highly scientific field like dental technology, can be

23  actionable as false statements, as opposed to mere opinion or puffery. *Millennium*,

24  2018 WL 5094965, at *11.

25      Further, these allegations are supported by numerous allegations throughout

26  the complaint, incorporated by reference into the Lanham Act and Section 17200

27  claims, that allege the following:

28

1     • TruAbutment sells abutments that it markets as cheap replacements that are

2       "compatible" with Straumann's dental implants. (Dkt. 1, ¶4:9-12);

3     • TruAbutment knows that these products copy Straumann's patented

4       connection. (Dkt. 1, ¶4:10-11);

5     • TruAbutment has failed to comply with the FDA's requirements designed to

6       ensure that TruAbutment abutments are safe and effective. (Dkt. 1, ¶4:11-13);

7     • On information and belief, TruAbutment's products appear to be failing at an

8       "unacceptably high rate." (Dkt. 1, ¶4:13-14);

9     • TruAbutment's abutments are therefore not actually compatible with

10      Straumann's implants. (Dkt. 1, ¶4:14-15);

11    • TruAbutment sells abutments that they market as "compatible" with other

12      manufacturers' implants, including Straumann's. (Dkt. 1., ¶24:15-16);

13    • TruAbutment's website advertises several groups of products (listed below

14      and referred to as the "Accused Products") which include abutments

15      advertised as "compatible with" Straumann implants, including bone-level

16      implants using Straumann's patented CrossFit connection (Dkt. 1, ¶24:16-20);

17    • Straumann has learned about two significant abutment fractures that required

18      surgical intervention involving TruAbutment components (Dkt. 1, ¶40:6-8).

19      As additional support, Straumann includes a screenshot of TruAbutment's

20 website, which promotes compatibility with Straumann's bone- and tissue-level

21 implants. (Dkt. 1, ¶ 25 and inserted graphic.)  Straumann further alleges that

22 TruAbutment markets its products with its logo superimposed over an American

23 flag despite foreign manufacturing. (Dkt. 1, ¶¶ 26-27 and inserted graphics.)

24 Accordingly, Straumann has specifically identified the Accused Products as "'DS

25 custom abutments"; "'angulated screw channel' line"; "'All-on-T' line of multi-unit

26 abutments"; "'T:Loc' overdenture abutments"; and "'Tru Base' and Cerec® Ti-Base

27 titanium abutments." (Dkt. 1, ¶24.) With respect to the TruAbutment DS product,

28 Straumann alleges that "TruAbutment DS incorporates the same material,

1   indications for use, dimension, design, abutment, seat, screw seat, anatomical site,

2   connection, type of retention, and technological characteristics of the predicate

3   device [including the Straumann predicate device.]" (Dkt. 1, ¶29.)  Straumann

4   further alleges that TruAbutment does not appear to have attempted to get 510k

5   clearance for its abutments advertised as "compatible" with Straumann's implants.

6   (Dkt. 1, ¶38:13-15.)

7        Even if, as Defendant argues, Defendant's FDA submissions are not

8   commercial advertisements within the scope of false advertising (Dkt. 29, p. 16,

9   lines 5-7), the website advertisements alone are sufficient to support a false

10  advertising claim. The Complaint's discussion of these advertisements is sufficient

11  to put Defendant on notice, per Rule 9(b), of which advertisements are false and

12  why.

13       Although TruAbutment attempts to manufacture ambiguity with respect to the

14  meaning of "compatibility" as a basis for claiming more specificity is required, a

15  plain reading of the complaint shows that Straumann has alleged facts with

16  sufficient particularity to identify the offending products and the falsity of the

17  representation that those products safely work with Straumann products.

18  **B.    STRAUMANN PLEADS TRUABUTMENT'S DECEPTION**
19  **WITH PARTICULARITY**

20       The Complaint, taken as a whole, sufficiently alleges deception or tendency

21  toward deception as a result of Defendant's false claims. Straumann alleges that

22  TruAbutment sells abutments that they market as "compatible" with other

23  manufacturers' implants, including Straumann's. (Dkt. 1, ¶24:15-16.)  Straumann

24  further alleges that "TruAbutment's statements and advertisements actually

25  deceived or have the tendency to deceive a substantial segment of its audience

26  including dental laboratories, dentists and the FDA." (Dkt.1, ¶92.)  Further,

27  Straumann alleges that "TruAbutment's deception is material, in that it is likely to

28  influence the purchasing decision of dentists and dental laboratories." (Dkt. 1, ¶ 93.)

The Complaint further alleges that, in most cases, dentists hire dental laboratories to select the proper parts for the procedure. (Dkt.1, ¶ 42.) When selecting Defendant's abutments, the laboratories rely on Defendant's assurances that the abutments are in fact "compatible" with Straumann implants. When utilizing the laboratory's recommendations, the dentist in turn relies on the laboratory's assurance that it has selected "Straumann compatible" parts. The laboratories and dentists are thus deceived when it turns out that the abutments are not as reliable as promised and do not mimic the critical anti-rotational and anti-jamming features of Straumann's patented system that ensure a perfect fit. (*See* Dkt. 1, ¶¶ 20-21.)

Perhaps most telling regarding TruAbutment's deceptive practices is the allegation regarding a discovery at a 2015 trade show:

> On information and belief, TruAbutment also knows and had known that the CrossFit connection is covered by the asserted patents. In 2015, a Straumann salesperson saw a TruAbutment booth at an industry trade show. He noticed that the TruAbutment booth was advertising CrossFit-"compatible" abutments, and asked how they could sell these abutments without a patent license from Straumann. Without responding to his question, the TruAbutment representative put the Straumann-compatible abutments in his pocket and refused to answer any other questions.

(Dkt. 1, ¶30.)

Similar to *Millennium,* in the context of a specialized field like dental technology, statements made to a targeted audience composed of other doctors can be sufficient to constitute false advertising. *Millennium*, 2018 WL 5094965, at *13 (citing *Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). Further, a "single promotional presentation to an individual purchaser can be enough to trigger the protections of the [Lanham] Act." *Id.* (quoting *Coastal Abstract Service*, 173 F.3d at 735). Straumann has specifically alleged the nature of TruAbutment's deception, the influence of the deception on

purchasers including laboratories and dentists, and TruAbutment's knowledge of its conduct sufficient to put TruAbutment on notice of the basis of this claim.

## C.   STRAUMANN PLEADS THE INJURY CAUSED BY TRUABUTMENT'S CONDUCT WITH PARTICULARITY

The Complaint, taken as a whole, explains how Defendant's false statements injure the goodwill associated with Straumann's implants.  Straumann specifically alleges that TruAbutment has encouraged others, including its customers, purchasers, and users to purchase and use the Accused Products. (Dkt. 1, ¶33:12-14.)  Further, an important component to the injury alleged in the Complaint is the injury to the public-at-large as a result of the proliferation of TruAbutment's substandard products into the marketplace.  Specifically, Straumann alleges that "[t]he failure of a knockoff abutment may unfairly cast doubt on the reliability of a safe and effective implant," i.e. Straumann's implants. (Dkt. 1, ¶ 42.)  Further, it is alleged that the failure of the Accused Products results in emergency surgery to remove the failed component through a common process known as Trephination, which carries a serious risk of damage to the patient's bone, tissue, nerves, and other oral structures. (Dkt. 1, ¶ 41.)  Straumann alleges injury in that the failure of the abutments (the identity of which are often not known to the implanting dentist due to the nature of the implant kits) may cause loss of confidence in the implant procedure.  Straumann alleges specifically that its innovative BLT Ø 2.9mm implant has been reputationally harmed as a result of defective TruAbutment products being paired with it. (Dkt. 1, ¶¶ 42-43.)

Straumann further alleges that it has suffered diversion of sales from itself to TruAbutment and a lessening of goodwill which its products enjoy with the buying public. (Dkt. 1, ¶ 95.)  Straumann also alleges that its damages are ongoing and that TruAbutment's conduct is interfering with Straumann's customer relationships. (Dkt. 1, ¶¶ 96-98.)  With respect to Straumann's need for injunctive relief, the Courts have recognized that "a competitor need not prove injury when suing to

enjoin conduct that violates section 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (citation omitted).

Accordingly, TruAbutment's focus, which lies solely on paragraph 95 of the complaint, is too narrow a reading and omits multiple other allegations in support of Straumann's injury in this matter.

## D.   STRAUMANN PLEADS UNFAIR COMPETITION WITH PARTICULARITY

As set forth above, Section 17200 "borrows" violations of other laws.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999). Here, Straumann's unfair competition claim makes clear that it is based on, among other things, TruAbutment's actions in violation of Sections 32 and 43 of the Lanham Act, 15. U.S.C. §§ 1114 and 1125(c), the allegations of which are incorporated into the unfair competition claim. (Dkt. 1, ¶¶ 102, 105.)  As a result, those allegations supply the requisite specificity in support of the unfair competition claim.

## E.   STRAUMANN PROPERLY STATES A CLAIM FOR RELIEF PURSUANT TO BUSINESS & PROFESSIONS CODE § 17200

"An order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).  However, the Courts have also recognized that restitution is not limited to the return of money once had:

> We have stated that "[t]he concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person." [Citation]. Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest.

*Id.* (citation omitted).

Here, Straumann expressly alleges that TruAbutment has obtained ill-gotten gains, including, but not limited to, money belonging to Straumann. (Dkt. 1, ¶108.) This allegation, when taken in context with the preceding paragraphs of the complaint detailing Straumann's Lanham Act claim, is sufficient to allege a proper basis for Straumann's unfair competition claim.

## VIII.   ALTERNATIVELY, IF THE COURT DETERMINES THAT ADDITIONAL FACTUAL DETAIL IS REQUIRED, STRAUMANN REQUESTS LEAVE TO AMEND

Although Straumann believes that the allegations of the complaint are sufficient to state the claims alleged against TruAbutment, if the Court is inclined to grant the motion to dismiss, Straumann respectfully requests leave to amend its pleading to assert additional facts in support of its claims. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'").

## IX.   CONCLUSION

For the foregoing reasons, Straumann respectfully requests that this Court deny TruAbutment's motion to dismiss and allow this action to proceed on the merits.  Alternatively, if the Court determines that additional factual detail is required in support of any of Straumann's claims, Straumann respectfully requests leave to amend.

DATED:  August 23, 2019          **EASTMAN MCCARTNEY DALLMANN LLP**

By:        /s/ Andrew S. Dallmann
_____
Andrew S. Dallmann
Attorneys for Plaintiffs
Straumann USA, LLC

1

2

## **CERTIFICATE OF SERVICE**

3        I certify that on August 23, 2019, I electronically filed the foregoing

4    PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with

5    the Clerk of the Court for the United States District Court, Central District of

6    California, by using the CM/ECF system.  Participants in the case who are

7    registered CM/ECF users will be served by the CM/ECF system.

8        Executed on August 23, 2019, at Irvine, California.

9

10                                                  /s/    *Andrew S. Dallmann*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28